IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SERGEI KOVALEV** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 22-1217** |
| **v.** | : | |
| | : | |
| **WALMART INC.,** *et al.* | : | |
| *Defendants* | : | |
| | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                          OCTOBER 27, 2022

## MEMORANDUM OPINION

**INTRODUCTION**

This matter arises out of an incident at a Walmart retail store where an unnamed customer hit Plaintiff Sergei Kovalev ("Plaintiff"), also a customer, with a shopping cart while Plaintiff waited in a checkout line. Plaintiff alleges that Defendant Brosnan Risk Consultants, Ltd. ("Brosnan"), an independent contractor hired to provide security services at the store, is liable to him for his injuries on account of Brosnan's negligence and violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law.[1]

Presently, before this Court is Brosnan's motion to dismiss filed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) based on Plaintiff's failure to allege facts sufficient to assert any viable claims. Plaintiff opposes the motion. For the reasons set forth herein, Brosnan's motion to dismiss is granted, *in part*, and denied, *in part*.

---

[1] Plaintiff asserts these same claims against Defendants Walmart Inc., Wal-Mart Stores East, Inc., and Wal-Mart Stores East, LP (collectively, the "Walmart Defendants"). Plaintiff's claims against the Walmart Defendants were addressed in a separate Memorandum Opinion dated October 11, 2022. [ECF 31].

**BACKGROUND**

When considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Here, the salient facts alleged in Plaintiff's complaint relevant to this motion are summarized as follows:

> Brosnan is a security service provider retained by Walmart Defendants to provide security services at the Walmart Supercenter located at 2200 Wheatsheaf Lane, Philadelphia ("Walmart Supercenter").
>
> On February 10, 2020, while Plaintiff was standing in a checkout line at the Walmart Supercenter, a customer behind Plaintiff started hitting him with her shopping cart while shouting "move the line." This other customer was accompanied by two individuals. As a result of the customer's conduct, Plaintiff alleges to have suffered "blunt force injuries," including, "severe mental trauma, psychological torment and severe distress." At the time, there were no security personnel present in the checkout area.
>
> Prior to and while Plaintiff was being struck by the other customer's shopping cart, no Walmart employee and/or any security personnel provided by Brosnan offered any safety or security measures. In addition, though observing the incident via real-time video surveillance in a security room located several feet away from the incident, neither Walmart security employees nor Brosnan's security personnel attempted to protect Plaintiff or prevent the attacks against him.

**LEGAL STANDARD**

When considering a Rule 12(b)(6) motion to dismiss, courts must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* To survive a motion

to dismiss under Rule 12(b)(6), "a plaintiff must allege facts sufficient to 'nudge [her] claims across the line from conceivable to plausible.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

**DISCUSSION**

In the complaint, Plaintiff asserts claims for assault and battery (Count I), negligence (Count II), gross negligence (Count III), negligent infliction of emotional distress (Count IV), reckless endangerment (Count V), negligence *per se* (Count VI), civil conspiracy (Count VII), and unfair trade practices (Count VIII), and makes demands for punitive damages and injunctive relief. Brosnan moves to dismiss each of these claims and demands. Brosnan's arguments will be addressed separately.

*Assault and Battery (Count I)*

At Count I, Plaintiff asserts a claim for assault and battery against Brosnan premised on his allegation that another Walmart customer hit Plaintiff with her shopping cart while he waited in a checkout line. Brosnan argues that this claim must be dismissed because Plaintiff has not alleged any facts or legal theory under which Brosnan could be liable for these intentional torts. This Court agrees.

Under Pennsylvania law, an assault is "an intentional attempt by force to do injury to the person of another, and a battery is committed whenever the violence menaced in the assault is actually done, though in ever so small a degree, upon the person." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994). "An assault requires both the actor's intent to place the individual in imminent apprehension of harmful or offensive contact and the individual's actual imminent apprehension." *Glass v. City of Phila.*, 455 F. Supp. 2d 302, 365–66 (E.D. Pa. 2006). A battery, on the other hand, occurs when "a person 'acts intending to cause a harmful or offensive contact

3

with the person of the other or a third person, or an imminent apprehension of such contact, and . . . a harmful contact with the person of the other directly or indirectly results.'" *Szydlowski v. City of Phila.*, 134 F. Supp.2d 636, 639 (E.D. Pa. 2001) (citations omitted).

Here, Plaintiff has not alleged any facts to support either an intentional attempt by Brosnan to cause Plaintiff physical injury or a fear of physical injury or any harmful contact by Brosnan. Plaintiff's assault and battery claims against Brosnan are premised merely on his allegation that Brosnan is somehow liable for the intentional torts of others on account of its status as the security provider for the Walmart store where Plaintiff was allegedly assaulted by another customer. Such allegations are insufficient to assert assault and battery claims against Brosnan. Therefore, Brosnan's motion to dismiss Count I is granted, and Plaintiff's claim for assault and battery is dismissed.[2]

### *Negligence—Failure to Provide Adequate Security, Failure to Protect, and Failure to Give Adequate Warning (Count II)*

At Count II, Plaintiff asserts a claim for negligence premised on Brosnan's alleged failure to provide adequate security, failure to protect, and failure to give adequate warning. It appears Plaintiff intends to assert this claim against Brosnan premised on its status as an entity acting on behalf of a "possessor of land," *i.e.*, the Walmart Defendants, under the Restatement (Second) of Torts (the "Restatement") §§ 344 and 383. Brosnan argues that Plaintiff has failed to allege facts sufficient to place Brosnan on the requisite notice to have required any action on the part of Brosnan to prevent Plaintiff's purported assault by another customer. Accepting Plaintiff's alleged facts as true, as this Court must at this stage in the proceedings, this Court disagrees with Brosnan.

---

[2] To the extent Plaintiff intended to assert a claim holding Brosnan liable for the intentional acts of other Walmart customers, such claims are more appropriately asserted as claims for negligence under the Restatement (Second) of Torts §§ 344 and 383, which have been adopted in Pennsylvania. Such claims are addressed in the analysis of Count II.

To assert a claim for negligence under Pennsylvania law, a plaintiff must plead facts sufficient to plausibly show four elements: "(1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting in harm to the interests of another." *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005). "The standard of care a possessor of land owes to one who enters upon the land depends upon whether the person entering is a trespasser, licensee, or invitee." *Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983). Under the Restatement § 383, one who acts on behalf of a possessor of land is subject to the same liability as the possessor. *See Vanesko v. Marina Dist. Dev. Co,* 38 F. Supp.3d 535, 541 n.6 (E.D. Pa. 2014) (noting that § 383 "imposes the same liability on independent contractors performing a service upon land on behalf of the land's possessor as it does on the possessor.").

Here, Plaintiff's theory is that Brosnan, the security entity acting on behalf of the Walmart Defendants (the "possessor[s] of land" entity), owes him a duty of care as a business invitee. A business invitee is "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." *Palange v. City of Phila. L. Dep't*, 640 A.2d 1305, 1308 (Pa. Super. Ct. 1994); Restatement (Second) of Torts § 332(3) (1965). The standard of care towards a business invitee is "the highest duty owed to any entrant upon the land." *Treadway v. Ebert Motor Co.*, 436 A.2d 994, 998 (Pa. Super. Ct. 1981); *see also Glass v. Freeman*, 240 A.2d 825, 829 (Pa. 1968) (explaining the heightened standard of care owed to business invitees). Because Plaintiff has alleged that he was the Walmart Defendants'

customer at the time of the incident, this Court agrees that he was a business invitee at the time of the incident.

As noted, it appears Plaintiff seeks to recover under the theories of liability created by §§ 344 and 383 of the Restatement. Section 344 provides:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to (a) discover that such acts are being done or are likely to be done, or (b) give warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Restatement (Second) of Torts § 344 (1965). As its language makes clear, § 344 applies specifically to business invitees who suffer harm caused by third persons or by the negligence of possessors of land under certain conditions. Further, comment f to § 344 provides that while a possessor of land is not an insurer of his patrons, "[i]f the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection." *Id.* § 344 cmt. f.

In addition, Section 383 provides:

> One who does an act or carries on an activity upon land on behalf of the possessor is subject to the same liability, and enjoys the same freedom of liability, for physical harm caused thereby to others upon and outside of the land as though he were the possessor of the land.

*Id.* § 383 (1965). As such, § 383 extends the liability imposed on a "possessor of land" to one who acts on behalf of the possessor. *Id.*; *see also Vanesko*, 38 F. Supp. 3d at 541 n.6. Sections 383 and 344 of the Restatement and § 344's comment f have long been the law of Pennsylvania. *See Moran*

*v. Valley Forge Drive-In Theater, Inc.*, 246 A.2d 875, 878 (Pa. 1968); *Felger v. Duquesne Light Co.*, 273 A.2d 738, 742 (Pa. 1971).

As noted, Plaintiff has alleged facts showing that he was a business invitee and that his harm was caused by a third party. Thus, the viability of Plaintiff's negligence claims turns on whether he has alleged facts sufficient to plausibly show that Brosnan had reason to anticipate the tortious conduct of Walmart's customers toward other customers standing in checkout lines such that Brosnan, as Walmart's independent contractor, had a "duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection." *See* Restatement (Second) of Torts § 344 cmt. f (1965).

With respect to Brosnan's notice, Plaintiff has expressly alleged the following:

> 100. Defendants also had knowledge of possibility and probability of such particular criminal activity.
>
> 101. Walmart stores have thousands of complaints every year about assault and battery inflicted against customers by other customers.
>
> 102. Walmart stores in Philadelphia also have multitudes of complaints every year about assault and battery inflicted against customers by other customers.
>
> 103. [The] Walmart store that Plaintiff visited on February 10, 2020, and where he was attacked also has multitudes of complaints every year about assault and battery inflicted against customers by other customers.
>
> ***
>
> 105. In addition, the Walmart's store in question (where Plaintiff was attacked) is the busiest store in the City of Philadelphia due to its proximity to the border with the State of New Jersey. Accordingly, many visitors from New Jersey are shopping for the selected items (for example, for non-taxable in Pennsylvania clothing) in the Walmart's store identified in this Complaint.

> 106. The Walmart's store in question (where Plaintiff was attacked), very often, and especially at the evening time, has enormous number of customers waiting in check-out lines, as it was on the day when Plaintiff was assaulted and injured.
>
> 107. Moreover, it was known to Walmart's management, and it was foreseeable, that attacks against customers are usually happening in check-out lines of Walmart stores.
>
> 108. The dangerous conditions for assault and battery in check-out lines have always existed in all Walmart stores; this fact was not only foreseeable but well known to all Defendants and Walmart's management.
>
> 109. Despite the fact that all Defendants and Walmart's management had actual or constructive notice of dangerous conditions, Defendants intentionally create[ed] the harmful condition by acting in [a] grossly negligent manner.

(Compl., ECF 1, at ¶¶ 100–03, 106–09). These alleged facts, which this Court must accept as true at this stage of the proceedings, are sufficient to have placed Brosnan on the requisite notice to trigger the duty to take reasonable precautionary measures to prevent the conduct alleged in the complaint. Brosnan's motion is denied with respect to Plaintiff's negligence claim (Count II).[3]

### *Gross Negligence (Count III)*

At Count III, Plaintiff asserts a claim for "gross negligence." As argued by Brosnan, "there is no separate cause of action under Pennsylvania law for gross negligence." *Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 215 n.2 (3d Cir. 2010); *see also Floyd v. Brown & Williamson Tobacco Corp.*, 159 F. Supp. 2d 823, 828 (E.D. Pa. 2001) (dismissing separately pleaded claim for gross

---

[3] Brosnan also baldly argues, without any legal support, that Plaintiff has failed to allege facts sufficient to meet his pleading burden with respect to causation and damages. Brosnan is mistaken. Plaintiff alleges that he suffered "blunt force injuries," "severe mental trauma, psychological torment and severe distress." (Compl., ECF 1, at ¶ 48). He has also alleged enough facts to reasonably infer, at this stage of the proceedings, that his injuries were caused by Brosnan's failure to take adequate precautionary measures, as required under §§ 344 and 383. On this basis, Brosnan's motion to dismiss Plaintiff's negligence claim (Count II) is also denied.

8

negligence).  Therefore, Brosnan's motion to dismiss Count III is granted, and Plaintiff's claim for gross negligence is dismissed.

### *Negligent Infliction of Emotional Distress (Count IV)*

At Count IV, Plaintiff asserts a claim for negligent infliction of emotional distress ("NIED"), premised again on Brosnan's alleged breach of its duty to take precautionary measures to prevent customer-on-customer assaults in its checkout lines.  In the motion to dismiss, Brosnan argues that Plaintiff's allegations do not satisfy the narrow requirements of NIED claims under Pennsylvania law and, further, that there is no legal basis under Pennsylvania law to impose vicarious liability on a retail store's security service provider for injuries inflicted by a third party.  This Court agrees.

Pennsylvania courts have recognized claims for NIED in four distinct circumstances.  That is, a plaintiff must allege facts to plausibly show that (1) the defendant "had a contractual or fiduciary duty toward him," (2) the plaintiff "suffered a physical impact," (3) the plaintiff "was in a 'zone of danger' and at risk of an immediate physical injury," or (4) the plaintiff "had a contemporaneous perception of tortious injury to a close relative."  *Doe v. Phila. Cmty. Health Alts. Aids Task Force*, 745 A.2d 25, 27 (Pa. Super. Ct. 2000), *aff'd*, 767 A.2d 548 (Pa. 2001).  A plaintiff must also plead severe emotional distress.  *Id.*

In *Toney v. Chester County Hospital*, the Supreme Court of Pennsylvania split evenly as to whether to allow NIED claims based on contractual or fiduciary duties but absent a physical impact.  *See* 36 A.3d 83 (Pa. 2011).  The leading opinion in *Toney*, written by the late Honorable Max Baer, concluded that claims premised on such "special relationships" do not require a physical impact.  *Id.* at 85.[4]  However, as Justice Baer further explained:

---

[4]   While *Toney* is not binding precedent, federal and state courts have consistently looked to Justice Baer's opinion as persuasive authority on the scope of this tort under Pennsylvania law.  *See, e.g.*, *Snyder*

9

> NIED is not available in garden-variety "breach of contractual or fiduciary duty" cases, but only in those cases where there exists a special relationship where it is foreseeable that a breach of the relevant duty would result in emotional harm so extreme that a reasonable person should not be expected to endure the resulting distress.

*Id.* Such a special relationship must entail "an implied duty to care for the plaintiff's emotional well-being" and cause emotional harm "likely to be experienced as a visceral and devastating assault on the self such that it resembles physical agony in its brutality." *Id.* at 95 (alteration and quotations omitted). Guided by *Toney*, Pennsylvania courts have recognized qualifying special relationships only in extremely limited circumstances. *See MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565, 593 (W.D. Pa. 2019) ("Since *Toney*, Pennsylvania courts have only found certain doctor/patient relationships . . . and one between an adoption agency and adoptive parents to support such a claim, declining to extend liability any further."). In contrast, the case law presents an ever-growing list of relationships which have *not* qualified. *See Hershman*, 17 F. Supp. 3d at 460 n.8 (listing cases in which a qualifying special relationship has not been found).[5]

---

*v. West Penn Allegheny Health Sys.*, 2014 Wl Pa. Dist. & Cnty. Dec. LEXIS 10808, at *4 (Pa. Ct. Com. Pl. Feb. 19, 2014) ("Subsequent Courts have not hesitated to rely upon and apply both the holding of *Toney* and Justice Baer's language and analysis."); *Hershman v. Muhlenberg Coll.*, 17 F. Supp. 3d 454, 460 (E.D. Pa. 2014) ("If the Supreme Court were to permit special relationship NIED claims, I predict it would do so by adopting the narrow grounds announced by the lead justices in *Toney*.").

[5]   *See Black v. Cmty. Educ. Ctrs., Inc.*, 2014 WL 859313 (E.D. Pa. Mar. 4, 2014) (no NIED liability in employer/employee relationship); *Hawkins v. Fed. Nat. Mortgage Ass'n*, 2014 WL 272082 (E.D. Pa. Jan. 23, 2014) (no NIED liability in lender/borrower relationship); *Yarnall v. Phila. Sch. Dist.*, 2013 WL 5525297 (E.D. Pa. Oct. 7, 2013) (no NIED liability between a union and its members); *Grimaldi v. Bank of Am.*, 2013 WL 1050549 (M.D. Pa. Mar. 14, 2013) (no NIED liability in lender/borrower relationship); *Okane v. Tropicana Entm't, Inc.*, 2013 WL 56088 (E.D. Pa. Jan. 3, 2013) (no NIED liability in casino/patron relationship); *Emekekwue v. Offor*, 2012 WL 1715066 (M.D. Pa. May 15, 2012) (no NIED liability between ethnic group organization and one of its members); *Shulick v. United Airlines*, 2012 WL 315483 (E.D. Pa. Feb. 2, 2012) (no NIED liability between an airline and its passengers); *Weiley v. Albert Einstein Med. Ctr.*, 51 A.3d 202, 218 (Pa. Super. Ct. 2012) (no special relationship between decedent's son and the hospital where father died); *Trotta v. Luckinbill*, 2014 WL 353817 (C.P. Lycoming Jan. 13, 2014) (no NIED liability in contractor/building owner relationship); *Healey v. Fargo*, 2012 WL 994564 (C.P. Lackawanna Mar. 20, 2012) (no NIED liability in lender/borrower relationship).

Notably, Plaintiff has not identified, and this Court is unaware of, any Pennsylvania cases holding a retail store or its independent contractor liable for negligent infliction of emotional distress premised on an injury to a customer directly caused by another customer.  In the absence of any such applicable or guiding caselaw, this Court is not inclined to extend what has otherwise been a limited cause of action in Pennsylvania.  Accordingly, Brosnan's motion to dismiss Count IV is granted, and Plaintiff's negligent infliction of emotional distress claim is dismissed.

### *Reckless Endangerment (Count V)*

At Count V, Plaintiff asserts a claim for "reckless endangerment" and cites to 18 Pa. Cons. Stat. § 2705 in support.  Brosnan moves to dismiss this claim on the grounds that there is no civil cause of action for reckless endangerment.  This Court agrees.  Reckless endangerment is a criminal charge set forth in Pennsylvania's criminal statutes.  *Id.*  Section 2705, however, provides no civil cause of action.  Accordingly, Brosnan's motion to dismiss Count V is granted, and Plaintiff's claim for reckless endangerment is dismissed.

### *Negligence Per Se (Count VI)*

At Count VI, Plaintiff asserts a claim for "negligence *per se*."  As argued by Brosnan, negligence *per se* is not an independent cause of action under Pennsylvania law, but rather a theory of liability.  *See In re Rutter's Inc. Data Sec. Breach Litig.*, 511 F. Supp.3d 514, 531 (E.D. Pa. 2021) (citing and discussing cases).  Therefore, Brosnan's motion to dismiss Count VI is granted, and Plaintiff's claim for negligence *per se* is dismissed.

### *Civil Conspiracy (Count VII)*

At Count VII, Plaintiff asserts a civil conspiracy claim premised on the same conduct underlying his negligence claim.  Specifically, and as clarified in his response, Plaintiff asserts that Walmart engaged in a conspiracy with its security contractor, Brosnan, to deprive Plaintiff of

security and protection. Brosnan argues that Plaintiff has not alleged facts sufficient to plausibly state a claim for civil conspiracy. This Court agrees.

Under Pennsylvania law, to assert a viable claim for civil conspiracy, a plaintiff must allege facts sufficient to plausibly show: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act by unlawful means or for an unlawful purpose; (2) an overt act done in furtherance of the common purpose; and (3) actual legal damage." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003) (quoting *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987–88 (Pa. Super. Ct. 1997)); *see also Skipworth by Williams v. Lead Indus. Ass'n, Inc.*, 690 A.2d 169, 174 (Pa. 1997). In addition, "absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. Ct. 2000). "Strict liability and negligence counts are insufficient to support [a] civil conspiracy claim." *Goldstein v. Phillip Morris, Inc.*, 854 A.2d 585, 590 (Pa. Super. Ct. 2004).

Plaintiff's civil conspiracy claim is premised on the same allegations as his negligence claim. He has not alleged any "separate underlying intentional or criminal act" by Brosnan that could serve as the underlying predicate for his civil conspiracy claim. *Id.* Therefore, Brosnan's motion to dismiss Count VII is granted, and Plaintiff's civil conspiracy claim is dismissed.

*Unfair Trade Practices (Count VIII)*

At Count VIII, Plaintiff asserts a claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law (the "UTPCPL"), 73 Pa. Cons. Stat. § 201-1 *et seq.*, premised on the same factual allegations as his negligence claims. In the motion to dismiss, Brosnan argues that Plaintiff has not alleged the requisite facts, particularly loss of money or property, to maintain a claim under the UTPCPL. This Court agrees.

The UTPCPL provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by . . . this act . . . are hereby declared unlawful." *Id.* § 201-3. The statute "is designed to protect the public from fraud and deceptive business practices." *In re Rutter's*, 511 F. Supp. 3d at 540 (citing *Pirozzi v. Penske Olds-Cadillac-GMC, Inc.*, 605 A.2d 373, 375 (Pa. Super. Ct. 1992)). It provides a private right of action for "[a]ny person who purchases . . . goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property" because of the seller's unfair or deceptive practices. 73 Pa. Cons. Stat. § 201-9.2(a). A plaintiff must also allege facts to show that the plaintiff suffered "an ascertainable loss as a result of the defendant's prohibited action." *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. 2001). "To allege an ascertainable loss, the plaintiff 'must be able to point to money or property that he would have had but for the defendant's fraudulent actions.'" *Riviello v. Chase Bank USA, N.A.*, 2020 WL 1129956, at *3 (M.D. Pa. Mar. 4, 2020) (quoting *Benner v. Bank of Am., N.A.*, 917 F. Supp. 2d 338, 359 (E.D. Pa. 2013)). These damages must be identifiable and "cannot be speculative." *Jarzyna v. Home Props., L.P.*, 185 F. Supp. 3d 612, 626 (E.D. Pa. 2016), *aff'd*, 783 F. App'x 223 (3d Cir. 2019).

As noted, Plaintiff asserts that he suffered physical or emotional injuries due to the conduct of another customer while shopping at Walmart. He does not allege that he purchased any goods or services from the Walmart Defendants or Brosnan or that he suffered any "ascertainable loss of money or property" because of Brosnan's deceptive or wrongful practices. *See* 73 Pa. Cons. Stat. § 201-9.2(a). Accordingly, Brosnan's motion to dismiss Count VIII is granted, and Plaintiff's UTPCPL claim is dismissed.

### *Punitive Damages*

Throughout the complaint, Plaintiff requests punitive damages for each of his claims. Pennsylvania has adopted the principles set forth in the Restatement § 908(2), which governs punitive damages. *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1277 (3d Cir. 1979); *McDaniel v. Merck, Sharp & Dohme*, 533 A.2d 436, 447 (Pa. Super. Ct. 1987). Section 908(2) provides:

> Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended and the wealth of the defendant.

Restatement (Second) of Torts § 908(2). To sustain a request for punitive damages, the pleadings must allege facts sufficient to demonstrate evil motive or reckless indifference to the rights of others. *McDaniel*, 533 A.2d at 447–48. Here, Plaintiff contends that Brosnan was negligent in failing to undertake sufficient precautions to prevent Walmart's customers from assaulting other customers while standing in checkout lines. These facts simply do not support any evil motive or reckless indifference to the rights of others. As such, Plaintiff's demands for punitive damages are dismissed.

### *Injunctive Relief*

Throughout his complaint, Plaintiff also makes vague references to a demand for injunctive relief. Plaintiff, however, has provided no legal basis under his remaining negligence claim for injunctive relief. As such, Plaintiff's demand for injunctive relief is dismissed.

**CONCLUSION**

For the reasons set forth, Brosnan's motion to dismiss is granted with respect to all of Plaintiff's claims, except the negligence claim (Count II). An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.